**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 11:54 am, Aug 25, 2015

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: ) | | Chapter 7 Case |
| ) | | Number 14-10311 |
| STANLEY EARL PURSE ) | | |
| ) | | |
| Debtor ) | | |
| _____) | | |
| ) | | |
| NAVY FEDERAL CREDIT UNION ) | | |
| ) | | |
| Plaintiff ) | | |
| ) | | |
| vs. ) | | Adversary Proceeding |
| ) | | Number 14-01022 |
| STANLEY EARL PURSE ) | | |
| ) | | |
| Defendant ) | | |
| _____) | | |

**OPINION AND ORDER**

Before the Court is a motion for summary judgment filed by Navy Federal Credit Union ("Navy") seeking a determination that Navy's claim is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A), §523(a)(2)(B) and §523(a)(6). Navy contends Stanley Earl Purse ("Purse") incurred several debts with Navy that he never intended to repay and defrauded Navy by providing false information about his income and the intended purpose of the proceeds. These are core proceedings pursuant to 28 U.S.C. §157(b) and the Court has jurisdiction under 28 U.S.C. §1334. Because disputes of material

AO 72A
(Rev. 8/82)

fact remain, Navy's motion for summary judgement is denied.

## UNDISPUTED FACTS

Purse worked as an aircraft mechanic, but after receiving a diagnosis of chronic obstructive pulmonary disease (COPD), he began seeking out new business ventures. He wanted to build his credit and wealth through other endeavors. In such pursuits, Purse claims he became the victim of a fraudulent scheme that injured Navy and Purse.

In an effort to pursue these new business ventures, Purse's son introduced him to Sam Banks in late 2012. Purse stated Sam Banks ("Banks") was a "financial guy" who could help build Purse's credit and wealth through buying and selling of properties. Purse 2004 Exam at 30. To facilitate this process, Purse gave Banks his personal information including his social security number, date of birth, and employment information. Purse Dep. at 14; Purse 2004 Exam at 40. Thereafter, Purse began to question how Sam Banks conducted business and decided instead to deal with Sam Banks's business partner, Linda Artis ("Artis") whom Purse believed was a lender who could help him obtain credit to finance his business endeavors. Purse 2004 Exam at 30-31. In turn, Artis introduced Purse to Al Banks,[1] a purported well-connected business individual

---

[1] No known relation to Sam Banks.

who pitched to Purse the business idea of buying luxury vehicles to lease to others. Purse Dep. at 31-32. Purse stated that he formed a business entity called "High Line" or something similar to undertake this new business venture. Purse Dep. at 14; Purse Dep. at 31-32. The business plan was to purchase high-end vehicles such as Porsches and rent them to customers.

Purse allowed his personal information to be utilized by Artis and Al Banks with the understanding that they were building his credit and establishing credit lines to finance this new business venture. He agreed to pay Artis and Al Banks based upon a percentage of the credit obtained. Purse 2004 Exam at 32-35, 39 and 41.

Purse indicates that he did not complete or review the loan application to Navy dated October 9, 2012 (the "Loan Application") but believes Artis, Sam Banks or Al Banks completed it. Purse Dep. at 30. The Loan Application indicates Purse's monthly income is $7,613.00 ($91,356.00 annually), and that the loan is for "personal expense no collateral", and fails to disclose the intent to pursue a business venture. Purse Dep. at 40; Purse Dep. Plaintiff's Ex. No. 13. Navy contends the Loan Application was false as to Purse's income and his intended purpose of the loan. Purse admits he never informed Navy that he planned to use the loan

3

proceeds for business purposes, but he states he never reviewed or even saw the online Loan Application. Purse Dep. at 30-32.

Purse acknowledges he signed the Promissory Note, Security Agreement and Disclosure in favor of Navy (the "Note") representing he would repay the loan and that the loan was for "personal expense." Purse Dep. at 40; Purse Dep. Plaintiff's Ex. No. 11 (the "Note"). He acknowledges receiving and depositing the $32,000.00 loan proceeds into his personal bank account. Purse Dep. at 31, 40, 43, 47-48; Purse Dep. Ex. No. 13. From these proceeds, he paid both business and personal expenses, including the agreed upon percentage commissions to Artis and Al Banks. Purse Dep. at 40 and 43; Purse 2004 Exam at 37, 39 and 43.

Navy contends it approved the loan based upon the information provided in the Loan Application and in reliance upon the representations from Purse that he would repay the loan in accordance with its terms and conditions. Navy states the information provided on behalf of Purse in the Loan Application raised no red flags that would lead Navy to believe any of the information was false. Aff. of Maxine Beecher ("Beecher Aff.") ¶7. Navy contends it would not have made the loan if it had known Purse did not plan to use the proceeds for personal purposes, or that he would fail to repay the loan. Beecher Aff. ¶9.

4

Substantially contemporaneously with the loan, Purse obtained a Navy credit card, as a result of Artis, Al Banks or Sam Banks applying online for the card on his behalf. Purse Dep. at 30-31; Purse Dep. Plaintiff's Ex. No. 14. Purse contends he never saw or reviewed the credit card application. Purse Dep. at 30-32. He acknowledges he utilized the credit card for personal and business expenses, including paying Artis and Al Banks their agreed upon percentage fee.

The applications for the loan and credit card were both dated October 9, 2012. Plaintiff's Ex. Nos. 13 and 14. The Loan Application lists Purse's monthly income at $7,613.00 ($91,356.00 annually). The credit card application reflects his monthly income was $8,274.83 ($98,974.00 annually). Purse Dep. 49-50; Plaintiff's Ex. Nos. 13 and 14. Navy contends Purse's stated income and intended use of the credit card are false and that Purse never intended to repay the debt under the terms of the credit card agreement. Beecher Aff. ¶17.

As shown above, the evidence concerning Purse's income on the applications is conflicting. In addition to these discrepancies, in his deposition, Purse stated his income in 2012 was between $78,000.00 ($6,500.00/month) and $80,000.00 ($6,666.67/month). Purse Dep. at 49-50. But when later asked if

5

his income in 2012 was $7,400.00/month ($88,800.00 annually) he stated yes and when asked if it is $7,600.00/month in 2012 ($91,200.00 annually), Purse answered yes. Purse Dep. at 52. Purse's 2012 joint tax return shows his household income at $97,122.00. Purse 2004 Exam, Plaintiff's Ex. No. 4. His Statement of Financial Affairs filed in connection with his 2014 bankruptcy petition states his 2012 income was $65,000.00. SOFA, Dckt. No. 1, Chap. 7 Case No. 14-10311. Debtor also testified that he is an hourly employee and sometimes he receives overtime, so his income varies. Purse's 2004 Exam at 58.

At the time he received the credit card and began using it, Purse acknowledges that he did not have enough income to make payments to Navy. Purse Dep. at 53-54. However, he states he expected to make sufficient money from his business venture to cover all his expenses and he kept some of the loan proceeds to make payments to Navy until this income materialized.

Purse states he was involved in numerous transactions with third party lenders. He claims he thought that high-end vehicles were being purchased in his name through some of the credit lines. Purse says he was shown the title to a Porsche that was supposedly bought in his name, but he never had physical possession of the actual title. Purse Dep. at 17, 22-24; Purse 2004 Exam at 112.

6

Purse testified he ultimately realized in late December of 2012 or early 2013 that no cars were actually being purchased when he noticed the numbers on the titles being shown to him indicated he had purchased the same car twice. Purse 2004 Exam at 38 and 126. Purse states he kept trying to see if Artis, Al Banks, and Sam Banks would "do the right thing and straighten up the mess at the time about the titles. . . ." Purse 2004 Exam at 126. Purse claims he spent some money trying to "straighten this mess out" and that sometime in February of 2013 he gave $11,500.00 to Charles Lane, an associate of Artis, whom Purse believed would help him straighten out his financial situation. Purse 2004 Exam at 78-82.

Then, Purse says he ultimately realized he had been defrauded in late 2012 or early 2013, after he started receiving calls from Fifth Third Bank that a $50,000.00 loan had been taken out in his name without his knowledge. Purse 2004 Exam at 127. In response, Purse contacted the Richmond County Sheriff's Department and filed a police report in March 2013 indicating that Al Banks had opened the bank account without his permission. Purse 2004 Exam Ex. No. 23. The Federal Bureau of Investigation and the Secret Service began investigating the matter. Purse 2004 Exam at 53-54. Purse contends this shows he had no fraudulent intent. Ultimately, Purse filed a chapter 7 bankruptcy petition in 2014.

7

Navy moves for summary judgment pursuant to 11 U.S.C. §523(a)(2)(A), §523(a)(2)(B) and §523(a)(6) arguing it never would have extended credit if it had known: Purse was using the money for a business venture; his income was only $70,000.00-$80,000.00; or that Purse would not be able to repay the debt. Conversely, Purse claims he was a victim of fraud and did not have the intent to defraud or cause injury to Navy and that Navy's reliance on the information in the online applications was not reasonable.

## CONCLUSIONS OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) made applicable to adversary proceedings by Fed. R. Bankr. P. 7056. The moving party has the burden of proof. Medicomp, Inc. v. United Healthcare Ins. Co., 562 F. App'x 754, 756 (11th Cir. April 1, 2014). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the non-moving party. All reasonable doubts and inferences should be resolved in favor of the opponent." Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1502 (11th Cir. 1985)

8

(citations omitted), <u>cert. denied</u>, 475 U.S. 1107 (1986).

Discharge in bankruptcy affords the honest but unfortunate debtor the opportunity of a fresh start and is a cornerstone of the Bankruptcy Code. See <u>Grogan v. Garner</u>, 498 U.S. 279, 286-87 (1991). Exceptions to discharge are construed strictly against creditors and liberally in of favor debtors. <u>In re St. Laurent II</u>, 991 F.2d 672, 680 (11th Cir. 1993); <u>In re Walker</u>, 48 F.3d 1161, 1164-65 (11th Cir. 1995). Navy has the burden of establishing that Purse is not entitled to discharge this debt by the preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279 (1991); <u>In re Metz</u>, 150 B.R. 821 (Bankr. M.D. Fla. 1993)(standard of proof is preponderance of the evidence).

### 11 U.S.C. §523(a)(2)(A).[2]

In order for summary judgment to be granted under 11 U.S.C. §523(a)(2)(A),[3] Navy must prove that: (1) Purse obtained

---

[2] While this opinion is organized under §523 sub-headings, the analysis and reasoning cited in each section applies to all subsections.

[3] 11 U.S.C. §523(a)(2)(A) states in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
(A) false pretenses, a false representation, or actual

9

money, property, or credit from Navy by making a false representation, false pretenses, or actual fraud; (2) Purse acted with the intent to deceive Navy; (3) Navy justifiably relied upon that representation; and (4) the creditor sustained a loss as a result of the representation and reliance. In re Harris-Onaxis, 479 B.R. 910, 916 (Bankr. N.D. Ga. 2011); In re Dover, 185 B.R. 85, 87-88 (Bankr. N.D. Ga. 1995) (citing St. Laurent v. Ambrose, 991 F.2d 672, 676 (11th Cir. 1993)); In re Van, 67 F.3d 277, 279 (11th Cir. 1995).

A false representation is an "express misrepresentation." See In re Gilmore, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998) (explaining false representations are "express misrepresentations"). "False pretense involves an implied misrepresentation or conduct intended to create and foster a false impression." In re Appling, 527 B.R. 545, 549-50 (Bankr. M.D. Ga. 2015) (citing Minority Equity Capital Corp. v. Weinstein (In re Weinstein), 31 B.R. 804, 809 (Bankr. E.D.N.Y. 1983). "Legal or constructive fraud, which involves an act contrary to a legal or equitable duty that has a tendency to deceive, yet not originating in an actual deceitful design, is insufficient." Harris-Onaxis, 479 B.R. at 915.

---

fraud, other than a statement respecting the debtor's or an insider's financial condition.

10

"Reckless disregard for the truth or falsity of a statement can also supply the necessary basis for a determination of non-dischargeability [under §523(a)(2)(A)]." Birmingham Trust Nat'l Bank v. Case, 755 F.2d 1474, 1476 (11th Cir. 1985), superseded on other grounds Pub. L. No. 98-353, 98 Stat. 333 (1984). In addition, "[i]t is well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under §523(a)(2)(A)." In re Appling, 527 B.R. 545, 550 (Bankr. M.D. Ga. 2015). However, for §523(a)(2)(A) grounds, the statement or representation must not be a "statement respecting the debtor's . . . financial condition." 11 U.S.C. §523(a)(2)(A). See generally In re Sharp, 340 F. App'x 899, at *1 (4th Cir. August 14, 2009)("Significantly, subsection (2)(A) does not apply if the disputed statement is "respecting the debtor's . . . financial condition.").

In this case, disputes remain as to the misrepresentations, Purse's intent and whether Navy's reliance upon the applications was justified. First, Navy contends that Purse fraudulently misrepresented his income in the credit card application. As previously discussed, the factual record is unclear on Purse's actual 2012 income leaving a question of material fact as to Purse's actual income and his intent when applying for credit

11

from Navy. At this stage, it also is unclear whether these purported representations fall within the scope of §523(a)(2)(A).

Navy contends Purse also misrepresented the intended purpose and contends Navy would not have entered the arrangements had it known the loan was not for personal expenses. Navy also argues Purse knew he did not have the income to repay the debt. Conversely, Purse argues he used the proceeds both for personal and business expenses. He states he thought he had entered into a legitimate business venture and would have funds available in the future to pay his debts off.[4] Purse did use some of the proceeds to pay on the debt to Navy. Purse was paying on the debt until he ran out money. Purse claims he was a victim of fraud himself. He argues his filing of the police report shows he had no intent to defraud Navy or any of his creditors.

The intent to deceive is largely an assessment of the credibility and demeanor of the debtor. <u>In re Miller</u>, 39 F.3d 301, 305 (11th Cir. 1994). Generally, a debtor's fraudulent intent cannot be determined on summary judgment. <u>See</u> <u>In re Williamson</u>,

---

[4] While Purse did not fill out the applications, he is liable for his agents' actions, done with his permission. <u>See</u> <u>In re Jones</u>, 197 B.R. 949, 959-960 (Bankr. M.D. Ga. 1996)(where a debtor has ratified or adopted the other's statements, "[t]he fact that another person filled out the [financial] statement will not insulate a debtor from liability"). In addition, the loan documents that Purse acknowledges signing in connection with the loan reflect the purpose of the loan is for "personal expense". Purse Dep. Plaintiff's Ex. No. 11.

12

2013 WL 441418, *5 (Bankr. S.D. Ga. Feb. 1, 2013)(stating the general rule that a debtor's intent usually cannot be resolved at the summary judgment stage). While it is true that under certain facts and circumstances summary judgment is appropriate and fraudulent intent may be inferred from circumstantial evidence; and that a reckless disregard for the truth can provide the basis to infer an intent to deceive, this is not the current situation. See generally Birmingham Trust Nat'l Bank v. Cast, 755 F.2d at 1476; In re Harris-Onaxis, 479 B.R. at 916. This case may ultimately result in Navy's debt being declared non-dischargeable, but at this stage where all reasonable doubts and inferences are resolved in favor of Purse, summary judgment is inappropriate given the facts and circumstances of this case.

Furthermore, at this point in the proceedings, the Court cannot determine whether Navy's reliance on the Loan Application, Note, and credit card application was justifiable. "Justifiable reliance is gauged by 'an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" In re Vann, 67 F.3d 277, 283 (11th Cir. 1995) citing Keeton Prosser & Keeton on Torts §108, at 751 (5th ed. 1984) (emphasis added). "[I]t is only where, under the

13


circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." Id. (brackets in original). In this case, Navy, a sophisticated lender, received two different applications completed on the same day, one for a loan and the other for a credit card. The income in the two applications differs. The credit card application stated Purse had an annual income of $98,974.00, while the Loan Application shows his annual income at $91,356.00. Purse Dep. at 49-50; Purse Dep. Plaintiff's Ex. Nos. 14 and 13, respectively. However, Navy contends there were no "red flags" that would cause Navy to have to investigate further. Beecher Aff. ¶7. Questions remain whether this discrepancy was sufficient to raise a red flag and whether Navy's reliance is justifiable in regards to its review and approval of these applications.

In addition, questions remain as to Purse's repayment intentions. "The debtor's insolvency or inability to pay does not by itself provide a sufficient basis for inferring the debtor's intent. A debtor's honest belief that a debt would be repaid in the future, even if in hindsight found to have been very unrealistic, negates any fraudulent intent." In re Jackson, 348 B.R. 595, 599

14

(Bankr. M.D. Ga. 2006) citing 4 Collier on Bankruptcy ¶523.08[1][d] (15th ed. rev. 2006). Debtor contends he expected the income from the business to support these loan payments. Debtor's overall credibility and demeanor needs to be considered.

Given the facts and circumstances of this case, summary judgment is denied as to Navy's §523(a)(2)(A) claim.

**11 U.S.C. §523(a)(2)(B).**

Navy also contends its debt is non-dischargeable pursuant to §523(a)(2)(B)[5] because the credit applications are writings, are materially false, pertain to Purse's financial condition, and by which Purse fraudulently obtained credit from Navy. For its debt to be non-dischargeable under 11 U.S.C. §523(a)(2)(B), Navy must prove the debt was obtained by a writing: (1) that is materially false;

---

[5] 11 U.S.C. §523(a)(2)(B) states in pertinent part:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
(B) use of a statement in writing--
  (i) that is materially false;
  (ii) respecting the debtor's or an insider's financial condition;
  (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
  (iv) that the debtor caused to be made or published with intent to deceive.

15

(2) respecting Purse's financial condition; (3) on which Navy reasonably relied; and (4) that Purse caused to be made or published with the intent to deceive. The writing must pertain to Purse's financial condition to be actionable under §523(a)(2)(B). See In re Hale, 139 B.R. 41, 43 (Bankr. M.D. Fla. 1992)(defining what constitutes a "writing respecting a debtor's financial condition").

Again, as previously stated, there is a question of fact as to whether Purse had the requisite intent to defraud Navy. The Court needs to observe Purse's demeanor and assess his credibility. There also remains a question of whether Navy's reliance was reasonable and whether the alleged false statements were material.

> Material falsity contains two elements: 1) a falsehood 2) that is significant in both amount and effect on the creditor receiving the financial statement. 'Materiality,' ... for purposes of §523(a)(2)(B) requires more than merely examining the truth of the information provided. A second step is required. The information must not only be substantially inaccurate, but also must be information which affected the creditor's decision making process . . . . The information must have actual usefulness to the creditor and must have been an influence on the extension of credit. Although there is substantial similarity between such analysis of "materiality" and the element of "reasonable reliance" ... analysis of the creditor's use of the requested information is appropriate in both contexts.

In re Jones, 197 B.R. at 955-56. The amount of Purse's income must be determined for the Court to analyze the materiality of

16

discrepancy in Purse's income. Furthermore, the materiality of Purse's representation that the loan was "personal" needs to be examined. Questions also remain whether Navy's reliance was reasonable.

At this stage in the proceedings, all reasonable inferences are resolved in favor of the non-movant. <u>Amey, Inc. v. Gulf Abstract & Title, Inc.</u>, 758 F.2d at 1502. The determination of whether a creditor's reliance is reasonable is a fact intensive analysis. <u>In re Jones</u>, 197 B.R. at 961.

> Whether a creditor's reliance was reasonable is a factual determination to be made in light of the totality of the circumstances. Among the circumstances that might affect the reasonableness of a creditor's reliance are: (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

<u>In re Jones</u>, 197 B.R. at 962 (<u>citing</u> <u>BancBoston Mortgage Corp. v. Ledford (In re Ledford)</u>, 970 F.2d 1556, 1560 (6th Cir. 1992), <u>cert. denied</u>, 507 U.S. 916 (1993). Other factors for the Court to consider include the creditor's "standard practices in determining

17

credit-worthiness" and the "standards or customs of the creditor's industry in evaluating credit-worthiness." In re Cohn, 54 F.3d 1108, 1117 (3d Cir. 1995). Just because Navy contends there are "no red flags" does not necessarily equate to reasonable reliance. See In re Jones, 197 B.R. at 962; In re Cohn, 54 F.3d at 1117(listing several factors). No investigation leading to no red flags does not necessarily equate to reasonable reliance at the summary judgment stage. In this case, there is no real evidence of any prior dealings or close relationship between Navy and Purse that would give rise to any heightened level of trust or scrutiny. In addition, whether the income discrepancies in the two applications are material and whether they should have raised "red flags" for a prudent lender to investigate further cannot be determined at this point. Lastly, there is insufficient evidence of Navy's standard loan practices compared with industry standards. At this point in the proceedings factual disputes remain and therefore summary judgment on the 11 U.S.C. §523(a)(2)(B) claim is denied.

**11 U.S.C. §523(a)(6)**.

Finally, Navy contends its debt is non-dischargeable because Purse's conduct willfully and maliciously injured Navy. See 11 U.S.C. §523(a)(6). Pursuant to 11 U.S.C. §523(a)(6), a debtor cannot discharge any debt "for willful and malicious injury by the

18

debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). To fall within the §523(a)(6) parameters the debt must arise from "a deliberate or intentional injury not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). An injury is willful when the injury or consequence itself was intended or substantially certain to result. Id. at 61; Hope v. Walker (In re Walker), 48 F.3d 1161, 1165 (11th Cir. 1995). An injury is malicious when it is "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will." Walker, 48 F.3d at 1164. "[T]he injury must invade the creditor's legal rights . . . 'in the technical sense, not simply harm to a person.'" In re Musilli, 379 F. App'x 494, 498 (6th Cir. 2010)(listing conversion as a type of misconduct that satisfies willful and malicious injury). For reasons previously discussed, Navy has not established that Purse intended to injury Navy as contemplated by §523(a)(6). A debt arising from a knowing breach of contract is not the type of debt excepted from discharge under 11 U.S.C. §523(a)(6). See Kawaauhau, 523 U.S. at 62 (rejecting an interpretation of §523(a)(6) which would render a knowing breach of contract nondischargeable). Purse claims to be a victim of fraud and contends he fully expected to make money in the new business venture. At the summary judgment

19

stage all reasonable inferences must be resolved in Purse's favor. Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d at 1502. Based upon the record presented, the Court cannot conclude at this point in the proceedings that Navy's debt is non-dischargeable pursuant to 11 U.S.C. §523(a)(6).

  For these reasons, Navy's motion for summary judgment is ORDERED DENIED.

           /s/ Susan D. Barrett
           SUSAN D. BARRETT
           CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 25th Day of August 2015.